**F. F. INSTRUMENT CORPORATION, Plaintiff, Appellee,**

v.

**UNION de TRONQUISTAS de PUERTO RICO, etc., Defendant, Appellant.**

**F. F. INSTRUMENT CORPORATION, Plaintiff, Appellant,**

v.

**UNION de TRONQUISTAS de PUERTO RICO, etc., Defendant, Appellee.**

**Nos. 76–1407, 76–1408.**

United States Court of Appeals, First Circuit.

Argued Feb. 7, 1977.

Decided May 27, 1977.

Angelo V. Arcadipane, Washington, D. C., with whom William W. Osborne, Jr., Washington, D. C., was on brief for Union de Tronquistas de Puerto Rico, Local 901.

Alan H. Randall and David P. Freedman, Hato Rey, P. R., with whom O'Neill & Borges, Hato Rey, P. R., was on brief, for F. F. Instrument Corp.

Before COFFIN, Chief Judge, INGRAHAM, Circuit Judge,[*] and CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

F. F. Instrument Corporation sued the Union de Tronquistas de Puerto Rico Local 901 in the district court under § 303 of the National Labor Relations Act, 29 U.S.C. § 187[1] for damages caused by the Union's illegal secondary picketing and related activities directed at the Company in June 1973. Liability was resolved summarily against the Union, and the district court awarded the Company damages totalling $16,566 for losses caused by the picketing and for attorney's fees and other costs incurred in connection with unfair labor practice proceedings brought before the National Labor Relations Board (NLRB). This appeal relates only to damages, the Union challenging various components of the award and the Company cross-appealing from the district court's refusal to allow much greater damages.

[We are omitting from the published opinion our detailed statement of facts and discussion of the Company's alleged economic losses from the secondary activity, these being without precedential value.]

The Company requested the district court to award it attorney's fees for expenses incurred in bringing the present § 303 suit, for the cost of filing an unfair labor practice complaint with the NLRB following the June 1973 strike, for the expense of resisting the Union's organizational campaign in 1973 and 1974 and for the costs of its participation in contempt proceedings initiated in this Court which ultimately resulted in a finding that the Union was in contempt of an outstanding broad order prohibiting it from engaging in illegal secondary activity. The Company also asked the district court to award compensation for employee time lost in connection with these proceedings. The court denied all of these claims except that for attorney's fees and other expenses in connection with the § 8(b)(4) unfair labor practice proceeding. The court awarded $11,292 in attorney's fees and $647 for employee time lost. The Union and the Company appeal.

 Attorney's fees in connection with a § 303 suit are not expressly authorized by the statute.[2] As the Company notes, the

---

* Of the Fifth Circuit, sitting by designation.

1. Section 303 of the NLRA, 29 U.S.C. § 187, provides:

 "(a) It shall be unlawful, for the purpose of this section only, . . . for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b)(4) [29 U.S.C. § 158(b)(4)].

 "(b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) . . . shall recover the damages by him sustained and the cost of the suit."

 The portions of § 8(b)(4) relevant to this case provide that it is an unfair labor practice for a union:

 "(i) to engage in . . . a strike . . . or (ii) to threaten, coerce, or restrain any person engaged in commerce . . . where in either case an object there of is—

 "(B) forcing or requiring any person to cease . . . doing business with any other person . . . . ."

2. Section 303 provides that, besides damages, a plaintiff may recover "the cost of the suit." Writing on a clean slate, it might be argued that the phrase, "cost of the suit", contemplates attorney's fees. However, where the latter are meant to be included as an element of cost, federal statutes have commonly so specified, e. g., 46 U.S.C. § 1227 (water carrier antitrust violations); 15 U.S.C. § 77k(e) (false securities registrations). And the Supreme Court has strongly hinted that this phrase in § 303 is to be interpreted as excluding attorney's fees. In *Teamsters Local 20 v. Morton,* 377 U.S. 252, 260 n.16, 84 S.Ct. 1253, 1259, 12 L.Ed.2d 280 (1964), the Court noted that Senator Taft stated during floor debate on the 1947 amendments to the National Labor Relations Act that "[u]nder the Sherman Act the same question of boycott damage[s] is subject to a suit for damages and attorneys' fees. In this case we simply provide for the amount of the actual damages." Senator Taft's remark and the Court's reference to it have been taken by appellate courts which have addressed the question as excluding attorney's fees associated with the § 303 action

only basis for awarding attorney's fees would be upon a showing that the Union acted in "bad faith, vexatiously, wantonly, or for oppressive reasons". *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), *quoting F. D. Rich Co. v. United States,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). In its appellate brief, the Company describes a number of alleged pre-trial acts and omissions of the Union which it claims amount to bad faith conduct in connection with its defense of the present suit. Only some of these allegations, however, are supported in the record now before us, and we are of course limited to that record. And, even more seriously, the Company points to no place in the record, and we have found none, where it ever specifically argues the bad faith exception to the district court. The *Alyeska* exception and the alleged improprieties should have been called to the attention of the district judge so that he could decide whether they reached the level of bad faith that would trigger an award. It is too late to raise this issue, which is largely discretionary with the lower court, for the first time on appeal.[3] *See SEC v. Howatt,* 525 F.2d 226, 230 (1st Cir. 1975); *Dobb v. Baker,* 505 F.2d 1041, 1044 (1st Cir. 1974).

The district court did award attorney's fees and other expenses incurred in connection with the Company's pressing an unfair labor practice claim before the NLRB. The record indicates that the Regional Director issued the charge in the unfair labor practice case in late September 1973, some three months after the picketing ceased. The only evidence called to our attention that bears on the timing of the Company's complaint to the NLRB is F. F. Instrument's President's testimony: "When we filed the unfair labor practice charge, four of our employees were interviewed for a period of two hours apiece for a total of eight hours . . . [g]iving testimony to our attorneys. . . . This was during the strike, during the 12th and the 13th." While this testimony shows that some legal expenses were incurred during the strike it does not tell us how much was spent before the strike ended and thus could be termed expended in an effort to halt the illegal activity. Nor does the summary of legal expenses introduced at trial show how much the company spent on legal fees during the strike. While the summary shows that $2,000 was spent on the "unfair labor practice case" during June 1973, this includes dates both before and after June 12–14 and contains no allocation to the period of the strike. And in view of the fact that the illegal activity was halted by the Union's entry into a collective bargaining agreement with the primary employer on the day following the filing of the unfair labor practice charge, 210 N.L.R.B. at 1045, we can hardly say, in the absence of any evidence, that the attorney's efforts after the strike ended were geared to preventing a recurrence of the picketing.

In determining whether attorney's fees expended in connection with an unfair labor practice or other proceeding are recoverable in a subsequent § 303 action, the Fifth Circuit stated that "costs of reasonable legal action taken . . . to effect a resumption of work may be recovered." *Sheet Metal Workers, Local 223 v. Atlas Sheet Metal Co.,* 384 F.2d 101, 110 (1967). *Accord, Teamsters Local 984 v. Humko Co.,* 287 F.2d 231, 243 (6th Cir.), *cert. denied,* 366

---

itself from the damages recoverable. *E. g., Mead v. Retail Clerks, Local 839,* 523 F.2d 1371, 1379–80 (9th Cir. 1975); *Bryant Air Conditioning & Heating Co. v. Sheet Metal Workers, Local 541,* 472 F.2d 969, 972 (8th Cir. 1973).

**3.** The Company also seems to suggest that we should give effect to the Puerto Rican rule that attorney's fees may be awarded where a party has acted "obstinately." *See, e. g., Betancourt v. J. C. Penney Co.,* 554 F.2d 1206 (1st Cir.

1977). While we give effect to a state's method of calculating damages in diversity suits, *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 259 n.31, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Betancourt v. J. C. Penney Co. supra; Pan American World Airways, Inc. v. Ramos,* 357 F.2d 341, 342 (1st Cir. 1966), local rules as to attorney's fees and other damages have no place in a § 303 action. *See Teamsters Local 20 v. Morton,* 377 U.S. 252, 261, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964).

U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254 (1961) (fees to assist "[in] the removal of the picket line" and "in filing the charge with the [NLRB] to bring about the removal of the picket line"); *Mason-Rust v. Laborers' Local 42*, 435 F.2d 939, 948 (8th Cir. 1970). *But see Mead v. Retail Clerks Local 839*, 523 F.2d 1371, 1380 (9th Cir. 1975).[4]

██ Even if we were to adopt this rule, we would not go beyond it. The statute permits recovery of "damages . . . sustained" by a person "by reason of any violation" of § 8(b)(4). Where attorney's fees are incurred in removing an illegal picket line or otherwise directly in mitigation of harm, fees are closely related to the illegality. But at some point the injured employer's continuing struggles with the offending Union, even if justified from the former's viewpoint, become too remote to be regarded as a component of the damages flowing from the prior wrong. Where the illegal conduct is over and the Board proceeding is aimed chiefly at securing redress and future protection, we think that the expenses incurred in obtaining that relief are not includable as "damages" flowing

from the illegal act.[5] The Board itself may sometimes choose to award attorney's fees in such circumstances, but this is a separate matter. *See, e. g., Tiidee Products, Inc.*, 194 NLRB 1234, 1236–37, *enforced as modified sub nom. IUE v. NLRB*, 163 U.S.App. D.C. 347, 502 F.2d 349, *cert. denied*, 417 U.S. 921, 94 S.Ct. 2629, 41 L.Ed.2d 226 (1974).

██ The vast bulk of the Company's legal fees relating to the unfair labor practice complaint were incurred after the strike ended and are clearly not reimbursable under the authority cited above. The Company failed to develop any particularized evidence showing what amount was expended during the strike. Even if we were to adopt the rule that legal fees incurred in seeking to remove an illegal picket line were reimbursable, we could not grant the Company a remittitur on a record from which it is impossible to make a relevant allocation of legal expenses. Nor do we find justification for a remand at this point to segregate out any allowable legal expenses which could be found to be directed to removal of the picket line. The Ninth

4. The Company cites several cases, all from the Fifth Circuit, which contain language which may be read as suggesting that attorney's fees in connection with any unfair labor practice proceeding stemming from illegal secondary activity are recoverable. These cases deal cursorily with the issue and explicitly rely on other Fifth Circuit cases which limit attorney's fees to those incurred in effecting a removal of the picket line or otherwise in mitigation of harm. Moreover, there is no indication in the cases cited by the Company that the attorney's fees were incurred in any other type of proceeding. We therefore regard the narrow rule quoted in the text as the accepted formulation.

The Company has called to our attention the recent Fifth Circuit case, *Linbeck Constr. Corp. v. Iron Workers Local 597*, 547 F.2d 948 (1977), apparently in the belief that this case signals an intention to permit recovery of attorney's fees except where the Union can show that the costs were unrelated to effecting a resumption and a continuance of the work. While the district court opinion quoted somewhat approvingly in *Linbeck, id.* at 950, is susceptible of such an interpretation, the Fifth Circuit panel's opinion restates the rule that "litigation expenses should be recoverable only when they are incurred in an effort to force the defendant to resume work." *Id.* If the panel had intended to depart from the settled rule or shift the

burden of proof to the Union, we expect that it would have used language different from the established formulation and made its intentions clear. In any case, we would not adopt a rule of damages more permissive than that quoted in the text and we would require the Company to show that the expenses were "incurred in an effort to force the defendant to resume work."

5. Examining the question in light of common law precedent, the Ninth Circuit has observed that where a plaintiff prevails in prior litigation against the same defendant in an action related to the same wrong, "[t]he general rule is that . . . attorneys' fees in the prior action are not recoverable in a subsequent suit. . . . [A]ttorneys' fees may not be recovered where the prior litigation involved the same parties, especially when the earlier action was instituted by plaintiff to secure redress for defendant's wrongful conduct." *Mead v. Retail Clerks, Local 839*, 523 F.2d 1371, 1380 (9th Cir. 1975).

Allowing attorney's fees for the unfair labor practice case would also create this anomaly: the cost of proving liability directly through a § 303 suit would be non-compensable; however, if the employer used the unfair labor practice proceeding to establish liability collaterally he could recover a large portion of the attorney's fees. *See id.* at 1381.

Circuit case barring any award, and the Fifth, Sixth, and Eighth Circuits' holdings, confining fees as we have indicated, were available at trial. The Company was therefore taking a long shot in presenting what little supporting data it did proffer with no details about time of rendition and the objectives of the particular services performed. We note also, from the brief time elapsing between the filing of the complaint and the settlement of the strike between the Union and the primary employer, that any allowable legal expenses would be, at best, de minimis. This reasoning also disposes of the Company's claim that the district court should have awarded attorney's fees and other costs incurred in connection with other proceedings even further removed from halting the illegal secondary activity.

*The judgment of the district court is affirmed in part and reversed in part and the case is remanded with instructions to enter judgment in the amount of $4,626.78.*