SUMMIT VALLEY INDUSTRIES, INC. *v.* LOCAL 112,
UNITED BROTHERHOOD OF CARPENTERS &
JOINERS OF AMERICA

No. 81–497.  Argued April 28, 1982—Decided June 1, 1982

MARSHALL, J., delivered the opinion for a unanimous Court.

*Donald C. Robinson* argued the cause and filed briefs for petitioner.

*David S. Paull* argued the cause for respondent. With him on the brief was *Paul T. Bailey.**

JUSTICE MARSHALL delivered the opinion of the Court.

We granted certiorari to decide whether § 303 of the Labor Management Relations Act (LMRA), 61 Stat. 158, as amended, 29 U. S. C. § 187, authorizes the recovery of attorney's fees incurred in prior proceedings before the National Labor Relations Board (Board). 454 U. S. 1079 (1981). The Courts of Appeals have divided on this issue.[1] In this

---

*\*J. Albert Woll, Laurence Gold,* and *George Kaufmann* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae* urging affirmance.

[1] The Fifth, Sixth, and Eighth Circuits have held that attorney's fees may be recovered. See *Texas Distributors, Inc.* v. *Local Union No. 100,* 598 F. 2d 393 (CA5 1979); *Local Union No. 984, International Brotherhood of Teamsters* v. *Humko Co.,* 287 F. 2d 231 (CA6), cert. denied, 366 U. S. 962 (1961); *Associated General Contractors of Minnesota* v. *Construction and General Laborers Local No. 563,* 612 F. 2d 1060 (CA8 1979). The First Circuit has expressed approval of this rule in dicta. See *F. F. Instrument Corp.* v. *Union de Tronquistas de Puerto Rico,* 558 F. 2d 607, 611 (1977). The Ninth Circuit alone has reached a contrary conclusion. See *Mead* v. *Retail Clerks International Assn.,* 523 F. 2d 1371 (1975).

case, the Court of Appeals for the Ninth Circuit held that attorney's fees may not be recovered. We affirm.

## I

Petitioner Summit Valley Industries, Inc. (Summit Valley), manufactures prefabricated modular homes. These homes are completed at petitioner's plant and sold directly to home buyers. The buyer then independently obtains the services of a local contractor to install the completed home and to attach ancillary structures. In June 1972, Summit Valley opened a plant in the Butte, Mont., area. Rather than utilizing skilled union carpenters at this plant, petitioner hired unskilled workers. These workers were represented by Butte Teamsters Union, Local No. 2 (Teamsters), under a collective-bargaining agreement between the Teamsters and Summit Valley.

Upon learning that Summit Valley employed no skilled carpenters, respondent Local 112 of the United Brotherhood of Carpenters and Joiners of America (Union) filed unfair labor practice charges against Summit Valley. The Union claimed that Summit Valley had violated a valid work-preservation agreement between the Union and area contractor associations. Although the Union withdrew these charges when it realized that Summit Valley was not a signatory to the agreement, it ordered its members not to work on the installation of petitioner's homes. On at least two occasions, Summit Valley sent its own employees to complete the installation work that would otherwise have been done by the Union. As a result, respondent began picketing petitioner's plant.

Summit Valley filed an unfair labor practice charge against the Union, alleging that respondent's work stoppage and picketing violated the secondary boycott and jurisdictional picketing prohibitions of the National Labor Relations Act (NLRA). §§ 8(b)(4)(B) and (D) of the NLRA, 29 U. S. C. §§ 158(b)(4)(B) and (D). The Regional Director of the Board

initiated a §10(*l*) proceeding, 29 U. S. C. §160(*l*), in the United States District Court for the District of Montana. The District Court imposed a temporary restraining order pending the outcome of the proceeding before the Board. *Henderson* v. *United Brotherhood of Carpenters and Joiners of America, Local 112,* Civ. Nos. 2235 & 2239 (1972). The Union ceased picketing in November 1972, and its members resumed the installation of Summit Valley's homes.

Summit Valley then initiated a §10(k) proceeding, 29 U. S. C. §160(k), seeking resolution of its claim that the Union had engaged in illegal jurisdictional picketing, prohibited by §8(b)(4)(D). After a 2-day hearing, the Board found against the Union, holding that Summit Valley had validly assigned the work in question to the Teamsters. *Carpenters, Local 112 (Summit Valley Industries),* 202 N. L. R. B. 974, 83 LRRM 1013 (1973). The Union agreed not to pressure Summit Valley to reassign work in violation of its collective-bargaining agreement with the Teamsters. However, the Union maintained that it had the right to truthfully advise the public that petitioner did not employ its members in the construction of modular homes.

After the §10(k) proceeding, an Administrative Law Judge (ALJ) conducted 15 days of hearings on the unfair labor practice charges. The ALJ concluded that the Union had violated §§8(b)(4)(B) and (D), but that the Union had sought to enforce the work-preservation clause on the good-faith belief that its actions were lawful. The Board adopted the findings of the ALJ, and it ordered the Union to cease and desist from these unfair labor practices, and to fully comply with the Board's order obtained as a result of the §10(k) proceeding. *Carpenters, Local 112 (Summit Valley Industries),* 217 N. L. R. B. 902, 89 LRRM 1799 (1975). The Court of Appeals for the Ninth Circuit enforced the Board's order. *Chamber of Commerce of United States* v. *NLRB,* 574 F. 2d 457 (1978).

This action was filed pursuant to §303 of the LMRA in the United States District Court for the District of Montana.

Summit Valley sought damages resulting from the Union's illegal secondary and jurisdictional activity in the amount of $17,279.33: $3,675.00 in business losses, and $13,604.33 in attorney's fees incurred during the Board proceedings. The District Court found that the Board's decision that the Union had committed unfair labor practices collaterally estopped the Union from relitigating this issue in the § 303 action. Relying on *Mead* v. *Retail Clerks International Assn.*, 523 F. 2d 1371 (CA9 1975), the District Court concluded that Summit Valley was not entitled to recover attorney's fees as part of its damages. The court entered judgment for Summit Valley, awarding it an amount that represented its business losses. 475 F. Supp. 665 (1979). The Court of Appeals affirmed in an unpublished *per curiam*. Civ. No. 79–4663 (CA9 1981); 652 F. 2d 65 (1981) (affirmance order).

## II

Under the American Rule it is well established that attorney's fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." *Fleischmann Distilling Corp.* v. *Maier Brewing Co.*, 386 U. S. 714, 717 (1967). This Court has endorsed certain exceptions to this rule where necessary to further the interests of justice. See, *e. g., Vaughan* v. *Atkinson*, 369 U. S. 527 (1962) (bad faith); *Toledo Scale Co.* v. *Computing Scale Co.*, 261 U. S. 399 (1923) (willful disobedience of a court order); *Central Railroad & Banking Co.* v. *Pettus*, 113 U. S. 116 (1885) (common fund). In the absence of one of these equitable exceptions, however, the rule has been consistently followed for almost 200 years. See *Alyeska Pipeline Co.* v. *Wilderness Society*, 421 U. S. 240, 249–250 (1975); *Arcambel* v. *Wiseman*, 3 Dall. 306 (1796). Recognizing this consistent adherence to the American Rule, petitioner contends that § 303 provides express statutory authorization for the recovery of attorney's fees incurred in prior Board proceedings. We find this contention unsupported by either the language or the legislative history of § 303.

Section 303 authorizes a private damages action for an employer who has been injured by a union's unfair labor practice. Section 303(a), 29 U. S. C. § 187(a), makes it unlawful for a labor organization to engage in conduct defined as an unfair labor practice under § 8(b)(4) of the NLRA. As a remedy for this conduct § 303(b) provides that "[w]hoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States . . . and shall recover the damages by him sustained and the cost of the suit." 29 U. S. C. § 187(b).

Section 303 does not expressly provide for the recovery of attorney's fees, so we are not presented with a situation where Congress has made "specific and explicit provisions for the allowance of" such fees. *Alyeska Pipeline Co.* v. *Wilderness Society, supra,* at 260, and n. 33 (collecting statutes). Nonetheless, Summit Valley argues that § 303 does specifically authorize a district court to award attorney's fees incurred for the purpose of terminating the Union's illegal secondary activity by providing for the recovery of "damages" resulting from this activity. Because attorney's fees expended to compel "'resumption of work in effect take the place of other compensable damages which would continue to be suffered if work were not resumed,'" petitioner asserts that such fees are part of the damages caused by the Union's illegal activity. Brief for Petitioner 13, quoting *Associated General Contractors* v. *Construction and General Laborers Local 563,* 612 F. 2d 1060, 1064 (CA8 1979).

In assessing petitioner's interpretation of the word "damages" in § 303(b), we begin with the "fundamental canon of statutory construction . . . that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin* v. *United States,* 444 U. S. 37, 42 (1979); *Burns* v. *Alcala,* 420 U. S. 575, 580–581 (1975). Ordinarily a statutory right to "damages" does not include an implicit authorization to award attorney's fees. Indeed, the

American Rule presumes that the word "damages" means damages exclusive of fees. See, *e. g.*, *Arcambel* v. *Wiseman, supra; Day* v. *Woodworth,* 13 How. 363 (1852); cf. *Teamsters* v. *Morton,* 377 U. S. 252, 260, n. 15 (1964). Thus, petitioner's claim can succeed only if an examination of the relevant legislative history demonstrates that Congress intended to give a broader than normal scope to the term "damages."

Our review of the legislative history of § 303 reveals no such intention. To the contrary, the little discussion pertaining to the scope of an employer's recovery under § 303(b) indicates that Congress did not intend to expand the term "damages" to include attorney's fees. The following colloquy between Senator Taft and Senator Morse is particularly instructive. In response to Senator Morse's suggestion that § 303(b) would impose virtually unlimited liability on unions, Senator Taft stated: "Under the Sherman Act the same question of boycott damage is subject to a suit for damages and attorneys' fees. In this case *we simply provide for the amount of the actual damages.*" 93 Cong. Rec. 4872–4873 (1947) (emphasis added). We find these remarks persuasive evidence that Congress did not intend attorney's fees which were expended to stop a union from engaging in illegal activity to be recovered as "damages" under § 303(b).[2]

In this respect, petitioner's claim is analogous to that presented in *Teamsters* v. *Morton, supra.* In *Teamsters,* this Court reviewed the history and policies underlying § 303 in order to determine whether that provision authorized an award of punitive damages. Relying on the same colloquy quoted above, we concluded that "recovery for

---

[2] Of course, these remarks are not conclusive. It is possible that Senator Taft's remarks may have been confined to a rejection of the recovery of attorney's fees expended during the § 303 proceeding itself. See *Mead* v. *Retail Clerks International Assn.,* 523 F. 2d, at 1380.

an employer's business losses caused by a union's peaceful secondary activity proscribed by § 303 should be limited to actual, compensatory damages." *Id.*, at 260. As we have often noted, one of the primary justifications for the American Rule is that "one should not be *penalized* for merely defending or prosecuting a lawsuit." *Fleischmann Distilling Corp.* v. *Maier Brewing Co.*, 386 U. S., at 718 (emphasis added). See also, *F. D. Rich Co.* v. *United States ex rel. Industrial Lumber Co.*, 417 U. S. 116, 129 (1974); *Farmer* v. *Arabian American Oil Co.*, 379 U. S. 227, 235 (1964). The congressional intention discerned in *Teamsters* to limit recovery to actual, compensatory damages, counsels against reading the word "damages" to include attorney's fees incurred during prior Board proceedings.

Nevertheless Summit Valley contends that allowing it to recover reasonable attorney's fees incurred during Board proceedings furthers the statutory intent to protect employers from the adverse effects of a union's illegal secondary activity. We agree that Congress was concerned about protecting employers from injury arising out of this type of activity when it enacted § 303. See generally S. Rep. No. 105, 80th Cong., 1st Sess., 54–55 (1947), 1 Legislative History of the LMRA 460–461 (1974) (Leg. Hist.); 93 Cong. Rec. 5060 (1947), 2 Leg. Hist. 1371 (remarks of Sen. Taft). However, we fail to see why this interest cannot be adequately protected by the award of compensatory damages for the business losses resulting from the Union's prohibited conduct.

Ultimately, petitioner's argument rests on the assumption that "Congress plainly intended Section 303 to be *fully* remedial and to restore to the victimized employer *all . . . losses* caused by the illegal activity." Brief for Petitioner 23 (emphasis added). Even assuming that attorney's fees are necessary to achieve full compensation, this justification alone is not sufficient to create an exception to the American Rule in the absence of express congressional authority. See *F. D.*

*Rich Co.* v. *United States ex rel. Industrial Lumber Co.,* *supra,* at 128–129. In *F. D. Rich,* this Court rejected the argument that attorney's fees should be awarded under the Miller Act, 49 Stat. 793, as amended, 80 Stat. 1139, 40 U. S. C. § 270a *et seq.,* because the Act provided for recovery of "sums justly due," 40 U. S. C. § 270b(a), and, unless fees were awarded, the legislative intent in favor of full compensation would be frustrated. 417 U. S., at 128.

In squarely rejecting this claim, we found it to be nothing more than a "restate[ment] of one of the oft-repeated criticisms of the American Rule." *Ibid.* Although this Court acknowledged that "there is some force to the argument that a party who must bear the cost of his attorneys' fees out of his recovery is not made whole," we concluded that the countervailing considerations which support the American Rule argue against placing exclusive reliance on the need to provide full compensation. *Id.,* at 129. These considerations include the possible deterrent effect that fee shifting would have on poor litigants with meritorious claims, the time, expense, and difficulty of litigating the fee question, and the possibility that the principle of independent advocacy might be threatened by having "the earnings of the attorney flow from the pen of the judge before whom he argues." *Ibid.* These same considerations persuade us not to infer that Congress intended to authorize fee shifting in § 303 actions in order to fully compensate an employer for the "damages sustained by him" as a result of a union's illegal activity.

Furthermore, petitioner's analysis would authorize the recovery of attorney's fees in every case where the plaintiff has prevailed against the defendant in prior litigation involving the same issues. See *Mead* v. *Retail Clerks International Assn.,* 523 F. 2d, at 1380.[3] Quite simply, anytime a plaintiff

---

[3] The rationale of petitioner's position would seem to require that fees be awarded whenever a defendant's wrongful conduct requires a plaintiff to incur more litigation expenses, even if those expenses are incurred *in the same action.* Furthermore, because the District Court gave the

must resort to litigation to enjoin the defendant from engaging in illegal conduct, arguably the plaintiff has been injured in the amount of its attorney's fees spent to obtain the injunction. Under petitioner's analysis, each plaintiff could recover the costs of this prior litigation as part of its damages in any subsequent action involving the same conduct. Such a result, however, is clearly barred by our prior decisions. The American Rule precludes courts from awarding attorney's fees incurred during prior proceedings in the same case. See *Fleischmann Distilling Corp.* v. *Maier Brewing Co., supra.* Similarly, courts have uniformly concluded that "where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, he can not in a subsequent action recover, as damages, his costs and expenses in the former action." *Ritter* v. *Ritter*, 381 Ill. 549, 555, 46 N. E. 2d 41, 44 (1943). See also *Flanders* v. *Tweed*, 15 Wall. 450 (1873); *Mead* v. *Retail Clerks International Assn., supra,* at 1380–1381; *Ritter* v. *Ritter*, 381 Ill., at 557, 46 N. E. 2d, at 45 (collecting cases).

This rule is universally followed in order to avoid the endless stream of litigation that might ensue if successful litigants could recover their attorney's fees in subsequent actions: "immediately upon the entry of judgment the plaintiff would start another action against the defendant for his attorney fees and expenses incurred in obtaining the preceding judgment." *Id.*, at 555, 46 N. E. 2d, at 44. Under petitioner's construction of § 303(b) the word "damages" would always encompass attorney's fees expended in prior litigation. In the absence of clear support for this construction in the language or the legislative history of § 303 we decline to adopt such a broad exception to the American Rule.

---

Board's findings collateral-estoppel effect in the § 303 action, petitioner did not have to relitigate the question whether the Union had committed an unfair labor practice. In effect, Summit Valley is therefore asking for fees that it would have incurred in the § 303 action had it not first litigated the issues before the Board.

## III

Attorney's fees incurred during prior Board proceedings are not a proper element of damages under § 303(b) of the LMRA. Accordingly, the judgment of the Court of Appeals for the Ninth Circuit is

*Affirmed.*