The AUSTIN COMPANY, Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 701, Defendant.

No. 86 C 6103.

United States District Court, N.D. Illinois, E.D.

Feb. 19, 1987.

Frank Borda, Bromley, Brown & Walsh, Washington, D.C., Bennett L. Epstein, Coffield Ungaretti Harris & Slavin, Chicago, Ill., for plaintiff.

John Toomey, Hugh Arnold, Arnold and Kadjan, Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Plaintiff, The Austin Company, brings this action under Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187, against defendant International Brotherhood of Electrical Workers, Local Union No. 701 (the "Union") for the damages it incurred on account of the Union's allegedly unlawful actions against plaintiff. The complaint alleges that Beam Industries, Inc., and MCI Telecommunications, Inc., entered into a contract whereby Beam would install telephone communications cables and wires at an MCI facility. Beam subcontracted the work to Unicomm, Inc. Unicomm had a collective bargaining agreement with Local OC 4255, Communication Workers of America. The Union in this case has a primary labor dispute with Unicomm.

Plaintiff Austin is the general contractor for the construction of additional facilities to the existing MCI administrative and communications center in Downers Grove, Illinois. Apparently, in its efforts to prevail in its primary dispute with Unicomm, the Union has attempted to get Austin employees and subcontractors to refuse to work and to get those employees and Austin to cease dealing in Unicomm products and to cease doing business with Unicomm. The Union's efforts in this regard substantially disrupted Austin's ability to work productively and, consequently, caused Austin substantial damages.

For purposes of this opinion, the Union's conduct is assumed unlawful as secondary

activity prohibited by section 8(b)(4)(B) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4)(B). Currently before the court are two issues which the court had the parties brief: (1) does the plaintiff have standing to sue the Union for damages under section 303 on account of the Union's unlawful conduct, and if so, (2) what damages are the plaintiff entitled to. The court now addresses these questions.

## I. Standing

■ The court agrees with the Union that the most current and comprehensive discussion of the issue of standing under section 303 is contained in *Charvet v. International Longshoremen's Association,* 736 F.2d 1572 (D.C.Cir.1984). In that decision, the Court began its opinion by noting that section 303 was broadly written and provided a civil damage remedy to a plaintiff who has been injured as a result of an unfair labor practice prohibited in section 8(b)(4) of the National Labor Relations Act. After an exhaustive review of all of the authorities on the subject, the Court concluded:

> To have standing to sue under section 303(b), there must have been some action by the defendant union against the plaintiff (or immediately affecting the plaintiff's property), which caused reasonably foreseeable injury to the plaintiff, and was a means by which the defendant sought to achieve an unlawful end.

*Id.* at 1582.

Based on the complaint, which allegations the court will accept as true for purposes of this opinion, plaintiff here has standing. The complaint alleges that the Union encouraged Austin employees to strike and to refuse to handle Unicomm products or otherwise deal with Unicomm. This activity caused reasonably foreseeable injury to plaintiff, such as the wages and salaries which plaintiff had to pay its employees during the time of this activity but from which plaintiff received no productive output on account of the Union's interference. Thus, there is standing. The extent to which such damages actually may be recovered (in light of MCI's reimbursements) is a separate issue and is addressed

in the next section. The *existence* of the injury and those damages, however, is sufficient to confer standing under *Charvet.* Moreover, even if the issues of "injury" and "recoverability of damages" are interrelated, the following section will establish that plaintiff can recover at least a portion of the damages it claims arises from the unlawful Union activity. Accordingly, plaintiff definitely has standing to bring this section 303 action for damages on account of the injury it has suffered.

## II. Damages

The real dispute before the court is what damages, if any, the plaintiff can recover. In its brief, plaintiff posits the following facts relating to the recoverability of its damages, which again the court will accept as true for purposes of this opinion. Plaintiff entered into a cost-plus-fixed-fee contract with MCI to construct an administrative and technical support building located in Downers Grove, Illinois. Austin incurred several types of damages as a result of the illegal Union strike at the Austin construction site. Those damages have been delineated in a document plaintiff has previously presented to the court entitled "Austin Company Damage Study." Seven distinct items of damage were outlined in that document.

Under Austin's cost-plus-fee arrangement with MCI, most, but not all items of damage enumerated in the Damage Study will be reimbursed by MCI under the terms of the contract. Specifically, the "nonproductive time of Austin's management and secretarial personnel" (which is set forth as the third item of damage) is not reimbursable and, consequently, will not be reimbursed to Austin by MCI. At the time plaintiff commenced this lawsuit, it also had not been reimbursed for the other six items of damage contained in the Damage Study. Plaintiff points out that even today it has not been "fully" reimbursed for these other items of damage, although plaintiff does not specify which items have not been reimbursed

Austin's contract with MCI requires that Austin provide MCI a full accounting for all project-related costs prior to final pay-

ment for those costs. Austin, then, is subject to reduction for any advanced payments MCI made to Austin which at the time of final accounting are determined not to be allowable costs. Finally, while the contract between Austin and MCI provides that MCI will reimburse Austin for losses and expenses not compensated by insurance "or otherwise" that Austin sustains in connection with the work, the contract also provides that all refunds which Austin receives shall accrue to MCI and that Austin shall make provision to secure said funds. Consequently, according to Austin, if it is awarded damages in this case, it will, under the terms of its contract, reimburse MCI accordingly.

### A. Damages for Nonproductive Managerial and Secretarial Time.

█ In a section 303 suit for damages, once liability has been established, a plaintiff is entitled to recover "actual compensatory damages" from the defendant. *Teamsters Local 20 v. Morton*, 377 U.S. 252, 262, 84 S.Ct. 1253, 1259, 12 L.Ed.2d 280 (1964). The damages must be nonspeculative and the direct and proximate result of the proscribed conduct. *Id.; Pickens-Bond Construction Co. v. Carpenters Local 690*, 586 F.2d 1234 (8th Cir.1978); *Mead's Market v. Retail Clerks Local 839*, 523 F.2d 1371 (9th Cir.1975). In this memorandum, the Union's liability is assumed. One item of identified and direct damage to plaintiff, according to the Damage Study, is Item Three, the wages paid to the nonproductive managerial and secretarial staff. As stated above, MCI will not reimburse Austin for this item of damage. Austin, therefore, will never be fully compensated for injuries the Union caused unless the Union pays at least this item of damage. Accordingly, Austin may recover Item Three damages from the Union as a matter of compensation.

### B. Damages Reimbursable Under the Cost-Plus-Fee Contract.

According to Austin, all other items of damage contained in the Damage Study will be reimbursed by MCI. The question, then, and the question which is most vigorously contested by the parties, is whether these items of damage may also be recovered from the Union.

Plaintiff seeks to answer this question by placing primary emphasis on *Mason-Rust v. Laborers' Local 42*, 435 F.2d 939 (8th Cir.1970), a case which bears important similarities to this one. The plaintiff in *Mason-Rust* was the general contractor under a cost-plus-fee contract with the Army Corps of Engineers for the construction of an ammunition plant in St. Louis, Missouri. The defendant union had conducted an illegal jurisdictional strike resulting in additional costs to *Mason-Rust*, which were later reimbursed by the Army under the contract. The union argued that *Mason-Rust* suffered no actual damages because it had been fully reimbursed by the Army. The Eighth Circuit held that the plaintiff was entitled to damages from the union, notwithstanding the reimbursement from the Army, to the extent caused by the strike. The Court predicated its result on three ideas. First, although the plaintiff had been reimbursed by the Army during the pendency of the action, it had not been reimbursed at the time the suit was filed. Second, and less technically, the Court felt that the plaintiff had the "right" to reduce its labor-related costs by suing the union for damages. Third, and most significantly, the Court held that the "collateral source rule" precluded the union's attempt to reduce the amount it had to pay in damages by the amount which the plaintiff had received from a collateral source (the Army). Under the collateral source rule, as explained by the Eighth Circuit, "a tortfeasor cannot escape liability for wrongdoing merely because of the fortuitous circumstances of reparation from a collateral source." *Id.* at 945. The Court recognized that the collateral source rule, if applicable at all, was applicable as a matter of substantive federal law as fashioned from the policies of the national labor laws. *Id.* Because the Court saw that the collateral source rule had been applied in other areas of labor law, such as when courts had refused to deduct unemployment benefits from the back pay awards employees

had received in actions brought under the National Labor Relations Act, the Eighth Circuit sought to apply the rule to the case at bar as a doctrine of federal labor law. *See id.*

One member of the *Mason-Rust* panel, Judge Lay, did not join the majority opinion but wrote separately in concurrence. He rejected the majority's reliance on the collateral source rule on the grounds that the Army had become subrogated to the plaintiff's claim after it reimbursed the plaintiff. Therefore, the Army was the only party that could recover damages. Nevertheless, Judge Lay concurred in the result because he reasoned that after the Army's reimbursement, the union could have moved to make the collateral source, the Army, a party to the action. But. since the union had not moved for joinder, Judge Lay concluded that the union must be held to have waived any objection to the plaintiff's prosecution of the claim. He therefore allowed recovery by the plaintiff against the union.[1]

The issue before the court now is whether this court should follow the majority's reasoning in *Mason-Rust* and hold that the collateral source rule permits Austin to sue the Union for those damages which MCI has or will reimburse Austin. Since this court does not sit in the Eighth Circuit, it is of course not bound to follow the majority result; it must determine if the reasoning is persuasive. Furthermore, this court considers only the collateral source issue material to this case. The two other points raised by the *Mason-Rust* majority in support of its decision to permit the plaintiff to recover damages from the union are not convincing to this court. Specifically, as stated before, the majority placed some reliance on the fact that at the time the action was commenced, no reimbursement had yet been made to plaintiff. In this court's view, such a fact standing alone should not determine whether a plaintiff has been injured. Rather, as Judge Lay reasoned, the relevant inquiry should be whether, at the time the damage issue was litigated, the plaintiff had been fully reimbursed. The extent to which there has actually been reimbursement affects the analysis of whether the plaintiff can still recover damges. If the collateral source rule applies, notwithstanding the reimbursement, then there is an injury for which damages can still be recovered. But if the rule does not apply, then the reimbursement lessens the extent of damages and the extent to which damages can be recovered. Thus, the relevant question, in this court's view, is whether *at this time* the plaintiff has been reimbursed, *and* whether in light of that reimbursement the collateral source rule still applies.

The second point raised by the *Mason-Rust* majority also should have no bearing on the outcome of this case. The majority viewed the plaintiff as having the "right" to protect the "integrity of its operations" under its contract with the Army, and to exercise its "responsibility to construct the project in a workman-like manner and to complete its contract within its estimated cost." *Mason-Rust*, 435 F.2d at 944. Such language seems to imply that since the plaintiff might be considered at fault for the cost increase precipitated by the strike, it had the right and responsibility to cure the problems for which it might be blamed. Of course, if the plaintiff could not be faulted for the increased costs, it would not need the "right" to bring those costs down to protect its "integrity." In reality, though, a contractor cannot be justly blamed for the increased costs it incurs on account of a union's secondary and illegal activity against the contractor over which the contractor had no control or ability to prevent. Therefore, it seems to this court that in this case it should not imply a "right" in the plaintiff to sue the Union in order to protect its "integrity." In this court's view, if that "right" to sue exists at all, it must derive from the collateral source rule. The court, therefore, will now

---

1. In a recent Eighth Circuit case, *Daniel Construction Co. v. Operating Engineers Local 513*, 738 F.2d 296 (8th Cir.1984), the Court of Appeals cited *Mason-Rust* and explained its holding but withheld comment on how *Mason-Rust* applied, if at all, to the case at bar. Therefore, *Daniel* does not provide this court with any guidance on how the Eighth Circuit itself views the continuing vitality of *Mason-Rust.*

examine the merits of applying the collateral source rule to this case.

There is one obvious argument in favor of applying the collateral source rule, as the Eighth Circuit has done, to the facts of this case. It is simply the idea that since the Eighth Circuit applied it on similar facts, this court should too. This argument is not particularly strong because, it turns out, only the Eighth Circuit in *Mason-Rust* has applied the collateral source rule to a section 303 damage suit. *Mason-Rust* has been cited for various other principles, but no court has, to this court's knowledge, ever relied on *Mason-Rust* specifically for applying the collateral source rule to a section 303 damage suit.[2] The Seventh Circuit has once cited *Mason-Rust* in support of applying the collateral source rule to a negligence tort action. *Allegheny Airlines v. United States*, 504 F.2d 104, 112 (7th Cir.1974), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 470 (1975). In that case, the plaintiff GECC sought to recover damages it had sustained as a result of a mid-air crash. GECC was the owner of one of the engines mounted on the destroyed Allegheny aircraft, which it had leased to Allegheny. The leasing agreement provided that in the event of loss, GECC could demand a replacement engine from Allegheny. In fact, GECC did receive the replacement engine. The defendants contended that since GECC had received a replacement engine from a collateral source, GECC had not suffered any damages. The Court rejected this argument, concluding that it ran contrary to the collateral source rule. The collateral source rule, of course, is a familiar part of the common law tort tradition. See Restatement (Second) of Torts § 920A comment b (1979). It is therefore no surprise that the Seventh Circuit relied on it in *Allegheny Airlines*, a negligence action. However, as will be explained below, certain factual aspects of this case militate against automatic application of the common law collateral source rule to this section 303 context, which is what the majority in *Mason-Rust* seemed to do.

To successfully determine whether the collateral source rule should apply in this case, the court must identify the policies and purposes of that rule and then determine if those policies and purposes are pertinent here. There are essentially two purposes to the collateral source rule. The first is that one who gratuitously donates a benefit to an injured party should not instead be forced, in effect, to transfer that benefit to the wrongdoer. Simply put, the donor's intentions should not be thwarted. *See id.*; see also *Hunter v. Allis-Chalmers Corp., Engine Division*, 797 F.2d 1417, 1429 (7th Cir.1986). This purpose obviously has no application here since the collateral benefit in this case (MCI's reimbursement) was not gratuitous but rather was contractually required.

The second purpose is that one who pays for some insurance against some type of injury should not be forced to donate the proceeds of that person's industry and foresight to the wrongdoer who causes the injury. *See id.* Restatement (Second) of Torts § 920A comment b (1979). At first blush, this purpose would seem to apply here. Plaintiff had the foresight to obtain a cost-plus-fee contract with MCI which included reimbursement for unexpected cost increases, such as most of those cited in the Damage Study. Presumably, plaintiff "paid" for this form of insurance by reducing the "fee" demand in its cost-plus-fee arrangement. Plaintiff should therefore, it could be argued, receive its full entitlement from this collateral source. If the Union is permitted to avoid payment for the damages it caused, then the Union would actually be benefiting from an insur-

**2.** The court's research has uncovered one, and only one, case where the collateral source rule was relied on in a section 303 context. In *Virginia Electric & Power Company v. International Brotherhood of Boilermakers*, 103 L.R. R.M. 3144 (N.D.W.Va.1980), a district court, without citing to *Mason-Rust*, briefly referred to the collateral source rule as one of several reasons for not allowing the union to offset the damages it owed a public utility by the amount that the utility would be able to recover from its customers. Because that court did not explore the contours of the doctrine, and because it was going to refuse to permit the offset for other reasons, this court does not consider *Virginia Electric* persuasive authority.

ance arrangement which the plaintiff, not the Union, paid for. To avoid this result, the collateral source rule would require the Union to pay for the full damages, notwithstanding the availability to the plaintiff of the collateral payment.

Despite the initial plausibility of this analysis, after a more thorough appraisal of the facts of this case, the court must conclude that this second purpose to the collateral source rule does not apply to this case. Traditionally, the willingness of courts to apply the collateral source rule to effectuate this second purpose derives more from a desire to avoid giving the defendant the undeserved windfall than from a desire to guarantee the plaintiff a double recovery. See F. Harper, F. James, Jr., & O. Gray, *The Law of Torts*, § 25.22 at 668–69 (2d ed. 1986) ("The common law ... saw no feasible way to withhold double benefit from plaintiff in these cases without giving defendant a windfall. Distaste for this consequence probably had more to do with permitting double recovery here than any belief in the merits of claimant's position."). Consistent with this observation is the idea that when a person insures against the risk of injury, she or he is paying to protect only against the risk of otherwise uncompensated injury, and not in favor of the possibility of obtaining double recovery. Thus, it is understandable that courts would be more concerned with preventing a windfall to defendant than with providing the plaintiff with double recovery. Indeed, public policy might militate against the notion that parties may intentionally "wager" in favor of the possibility of a double recovery. *See id.* at 666–67 & n. 14 (citing R. Keeton, *Basic Text on Insurance Law* 88–98, 101 et seq. (1971)).

■ This analysis suggests that the second purpose of the collateral source rule, in reality, is primarily if not exclusively to prevent undeserved (and unpaid for) windfalls to the defendant, and not to guarantee the plaintiff double recovery for a single injury. One approach the law has developed in certain appropriate cases for accomplishing the goal of preventing a windfall to the defendant (that is, still holding

the defendant liable for damages) while simultaneously avoiding double recovery to the plaintiff is the device of subrogation. *See id.* at 668. This is the approach Judge Lay advocated in *Mason-Rust*. In his view, once the plaintiff had been reimbursed by the Army, the Army-indemnitor was subrogated to the plaintiff's claim for damages. *Mason-Rust*, 435 F.2d at 948. The subrogation meant that the plaintiff was no longer injured, *id.* at 949, and therefore lacked standing to sue, *see id.* But the union, through subrogation, was still liable for the damages it caused—liable to the Army. Subrogation was appropriate precisely because "the plaintiff [had been] reimbursed and by reason of the reimbursement los[t] his complete interest in the claim, by transfer or otherwise, to his indemnitor." *Id.* at 948. Furthermore, in Judge Lay's view, the collateral source rule does *not* apply in cases of subrogation. *Id.* Therefore, Judge Lay concluded, the plaintiff in *Mason-Rust* could not invoke the collateral source rule to obtain damages from the union. Significantly, the Seventh Circuit is in accord with Judge Lay's opinion that a plaintiff does *not* enjoy the benefit of the collateral source rule when his rights against the wrongdoer have been subrogated to an indemnitor. *Carter v. Berger*, 777 F.2d 1173, 1175 (7th Cir.1985) ("The 'collateral benefit' rule of tort law rests on the belief that the wrongdoer should be made to pay [the victim]—the better to deter like conduct—whether or not the victim has providently supplied another source of compensation, unless the supplier of the compensation has a subrogation clause."). In short, when subrogation is appropriate, as it is when there is some sort of actual or implied subrogation agreement, the collateral source rule does not apply. The question, then, is whether subrogation is appropriate here.

■ The court has little difficulty concluding that subrogation is appropriate here. According to the plaintiff's description of the cost-plus-fee contract, all payments that Austin shall receive as damages in this action shall accrue to the benefit of MCI, if MCI has previously reimbursed Austin for those damages. Although the

court does not have the actual contract before it, this description of the agreement indicates that because of the reimbursement, MCI has the rights to any monies which Austin may receive from the Union. Thus, by agreement, MCI essentially "owns" the benefits of any claim Austin has against the Union for losses the Union caused Austin and for which MCI has compensated Austin. This is the essence of subrogation, and Judge Lay so concluded on similar facts in *Mason-Rust*. *See also Carpetland v. Adler*, 107 F.R.D. 357 (N.D. Ill.1985) (describing subrogation generally).

There is a further reason for concluding that in this case MCI has subrogation rights. This case arises under the national labor laws between a union and employer. Those laws seek to strike a balance between the powers of labor and management so that industrial disputes can be productively resolved through regulated economic conflict rather than through more destructive forces. Given this balanced national policy, it would be especially anomalous to permit an employer to obtain double recovery for a single injury. Of course, double recovery in this case would not noticeably skew the balance of power that Congress has struck in the labor laws. Nevertheless, any double recovery, in the face of the feasibility of subrogation, would be antithetical to the goals of federal labor law. Accordingly, the court will utilize the device of subrogation so that the employer does not receive a double recovery, but the Union will nevertheless remain liable (to MCI, the collateral payor) for the damages it caused. Such a result is the most compatible with the policies underlying federal labor law.

In summary, as to those items of damage for which MCI has reimbursed the plaintiff, MCI is subrogated to the rights of the plaintiff. Because of this subrogation, the collateral source rule does not apply. Therefore, the plaintiff's injury is reduced by the amount of those payments and the plaintiff may not obtain those items of damage from the Union.[3] As to those items of damage for which MCI has not reimbursed plaintiff, but which it has the legal obligation to provide (this excludes Item Three damages), there is no subrogation yet. Therefore, the collateral source rule still applies, and plaintiff may obtain those items of damage from the Union. This conclusion may make the interpleader of MCI appropriate (the Union may risk multiple judgments otherwise), but at this point the court intimates no view on the merits of a (not yet proposed) Fed.R.Civ.P. 22 motion to join the MCI in this action. Finally, as to those items of damage for which MCI has no legal obligation to reimburse Austin (i.e., Item Three damages), the plaintiff may obtain those items from the Union.

### C. *Attorneys' Fees and Punitive Damages.*

Plaintiff's complaint includes a prayer for attorneys' fees and punitive damages. Plaintiff's brief, however, contains no comment on whether these items of damage are recoverable from the Union. As the Union makes clear, however, the Supreme Court held in *Summit Valley Industries, Inc. v. Carpenters Local 112*, 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982), that section 303 does *not* authorize

---

**3.** Plaintiff suggests that it would be inappropriate to consider any of the already-made reimbursements "final" because prior to MCI's final payment to Austin on the contract, Austin must make a full accounting of its costs. Austin, then, is subject to a reduction for any advanced payments, such as the reimbursements, which are determined to be not allowable costs. The validity of this argument depends on the meaning of "allowable costs" in the contract. Determining which costs are allowable can be accomplished only if MCI is made a party to this action. Thus, plaintiff's argument that the reimbursements are not "final" is really an argument

for joining MCI in this action as a necessary party under Fed.R.Civ.P. 19. But the court need not definitively decide now whether joinder is necessary because in this case plaintiff has not alleged that the items in the Damage Study (save for Item Three) may not be "allowable costs" under the contract. Quite to the contrary, paragraph three of plaintiff's "Statement of Facts" in its brief indicates that all damage items (except Item Three) are indeed reimbursable. Thus, plaintiff's argument that some reimbursements may not be "final" has no bearing on the facts of this case.

the recovery of attorneys' fees either in proceedings before the National Labor Relations Board or in damage actions. Equally clear is the longstanding rule that punitive damages are not recoverable in section 303 suits because such suits are limited to "actual compensatory damages." *Teamsters v. Morton*, 377 U.S. 252, 84 S.Ct. 1253, 12 L.Ed.2d 280 (1964); *see also IBEW v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

The court is surprised that plaintiff would request such items of damage in the complaint when the law disallowing such items is so clear and established. This put the Union to the task of drafting a portion of a brief that was completely unnecessary and wasteful. The court admonishes the plaintiff for its oversight.

### Conclusion

Plaintiff has standing to sue. Plaintiff may not recover from the Union for those items of damage that MCI has already reimbursed plaintiff. Plaintiff may recover from the Union those damages not yet reimbursed or not reimbursable under the cost-plus-fee contract. Plaintiff may not collect attorneys' fees or punitive damages.

It is so ordered.