KING, Circuit Judge,
dissenting:
The Lanham Act provision at issue here, 15 U.S.C. § 1071(b)(3), makes no reference to attorney’s fees awards and does not reflect a Congressional intention to authorize such awards. Nevertheless, the panel majority affirms the district court’s attorney’s fees award to the PTO under § 1071(b)(3), in contravention of the. American Rule. As Justice White explained for the Supreme Court in 1975, the American Rule “is deeply rooted in our history and in congressional policy; and it is not for us to invade the legislature’s province by redistributing litigation costs.” See Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 271, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Because the American Rule applies and the PTO should bear its own attorney’s fees, I respectfully dissent.
A.
Our judiciary strongly disfavors awards of attorney’s fees that are authorized solely by the courts — a well-settled tradition dating almost to our Nation’s founding. See Arcambel v. Wiseman, 3 U.S. (3 Dall.) 306, 306, 1 L.Ed. 613 (1796) (“The general practice of the United States [courts] is in opposition to [attorney’s fees awards]; ■ and even if that practice were not strictly correct in principle, it is entitled to the respect of the court.”). In recognition of the “power and judgment” of Congress, the federal courts defer to the legislative branch to determine if a “statutory policy [authorizing such awards] is deemed so important that its enforcement must be encouraged.” See Alyeska, 421 U.S. at 263-64, 95 S.Ct. 1612. Thus, as we recently emphasized, absent “explicit statutory authority,” the courts presume that the litigants will “bear their own legal costs, win or lose.” See In re Crescent City Estates, LLC v. Draper, 588 F.3d 822, 825 (4th Cir.2009). That principle — commonly known as the American Rule — should be recognized and applied here.[1]
The only issue we must resolve today is whether 15 U.S.C. § 1071(b)(3) “clearly *228 and directly” provides for attorney’s fees awards. See Crescent City, 588 F.3d at 825. For at least three compelling reasons, the statute fails to authorize such awards. First, the words “attorney’s fees” are not found in § 1071(b)(3). Second, the statute otherwise provides no “clear support” for awards of such fees. See Unbelievable, Inc. v. N.L.R.B., 118 F.3d 795, 801 (D.C.Cir.1997) (explaining that a court may not “infer a congressional intent to override the presumption that the American Rule erects against the award of attorney’s fees without ‘clear support’ either on the face or in the legislative history of the statute”). Third, the background and history of § 1071(b)(3) fail to show that Congress intended to authorize such fee awards. See id. Accordingly, § 1071(b)(3) cannot overcome the presumption against fee awards embodied in the American Rule, and the district court’s award of attorney’s fees should be vacated.
1.
As an initial matter, Congress failed to use any language in § 1071(b)(3) of Title 15 that authorizes attorney’s fees awards. Indeed, the term “attorney’s fees” is absent from § 1071(b)(3). Of great importance, however, Congress has exercised its “explicit statutory authority” to authorize attorney’s fees awards in at least five other provisions of Chapter 22 (Trademarks) of Title 15:
• 15 U.S.C. § 1114(2)(D)(iv) (imposing liability on party making material misrepresentations “for any damages, including costs and attorney’s fees”);
• 15 U.S.C. § 1116(d)(ll) (authorizing, in action for wrongful seizure of goods or marks, award of “reasonable attorney’s fee”);
• 15 U.S.C. § 1117(a) (authorizing, in “exceptional cases,” awards of “reasonable attorney fees” to prevailing parties);
• 15 U.S.C. § 1117(b) (authorizing recovery of “reasonable attorney’s fee” in counterfeit mark litigation); and
• 15 U.S.C. § 1122(c) (specifying remedies of prevailing party as including “actual damages, profits, costs and attorney’s fees”).
Because Congress made multiple explicit authorizations of attorney’s fees awards in Chapter 22 of Title 15 — but conspicuously omitted any such authorization from § 1071(b)(3) — we must presume that it acted “intentionally and purposely in the disparate ... exclusion.” See Clay v. United States, 537 U.S. 522, 528, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) (internal quotation marks omitted).
Furthermore, Congress has consistently shown that it knows how to draft a statute that authorizes attorney’s' fees awards. See, e.g., Stephens ex rel. R.E. v. Astrue, 565 F.3d 131, 138 (4th Cir.2009). For example, Congress has on multiple occasions authorized such fee awards, independently of expenses and costs:
• 11 U.S.C. § 363(n) (authorizing trustee to recover “any costs, attorneys’ fees, or expenses incurred”);
• 12 U.S.C. § 1464(d)(1)(B)(vii) (requiring federal savings associations to pay “reasonable expenses and attorneys’ fees” in enforcement actions);
• 26 U.S.C. § 6673(a)(2)(A) (requiring lawyers who cause excessive costs to pay “excess ’costs, expenses, and attorneys’ fees”); and
• 31 U.S.C. § 3730(d)(4) (authorizing “reasonable attorneys’ fees and expenses” to prevailing defendant in false claims suit).
On occasion, Congress has explicitly authorized a party to recover attorney’s fees as part of expenses. See 12 U.S.C. *229 § 5009(a)(1)(B) (holding party at fault liable for “interest and expenses (including costs and reasonable attorney’s fees and other expenses of representation)”); Fed.R.Civ.P. 37(a)(5)(A) (requiring party at-fault to pay “reasonable expenses ... including attorney’s fees”). And, consistent with the American Rule, Congress excluded attorney’s fees from the costs that are generally recoverable by prevailing parties in federal civil proceedings. See Fed.R.Civ.P. 54(d)(1) (“[C]osts — other than attorney’s fees — should be allowed to the prevailing party.”). The clear message of the foregoing is simple: if Congress had intended to authorize attorney’s fees awards to the PTO under § 1071(b)(3), it would have said so. Because subsection (b)(3) does not mention attorney’s fees, we have no right to judicially conjure up such a provision.
2.
Next, the plain terms of § 1071(b)(3) fail to show that Congress desired to provide for attorney’s fees awards. Although “expenses” under § 1071(b)(3) is not defined, in its dictionary form the term “expenses” is generally synonymous with the word “costs.” See Black’s Law Dictionary 345, 577 (6th ed.1990) (equating “cost” to expense and “expense” to cost); Merriam Webster’s Collegiate Dictionary 282, 440 (11th ed.2004) (defining “costs” as “expenses incurred in litigation,” and “expense” as “cost”); Oxford Dictionary of English 615 (3d ed.2010) (defining “expense” as “the cost incurred in or required for something”).[2] Because Congress declined to add any language to § 1071(b)(3) to define the term “expenses,” its omission must be deemed intentional.
3.
In view of the foregoing principles, the PTO’s claim that it is entitled to recover its attorney’s fees can only succeed “if an examination of the relevant legislative history demonstrates that Congress intended to give a broader than normal scope” to the phrase “all the expenses of the proceeding,” in § 1071(b)(3). See Summit Valley Indus. Inc. v. Local 112, 456 U.S. 717, 723, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982). The statute’s legislative history,’ however, fails to indicate that Congress intended to authorize attorney’s fees awards.[3] As heretofore explained — and with repetition sometimes being healthy— Congress knows how to provide for awards of attorney’s fees when it wants to do so.
The absence of supportive legislative history regarding the recovery of attor *230 ney’s fees under § 1071(b)(3) is telling, particularly in light of the Supreme Court’s 1975 decision in Alyeska. Congress responded to Alyeska, as the Court recognized in 1987, by “broadening the availability of attorney’s fees in the federal courts.” Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 444, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (emphasis added). In the wake of Alyeska, Congress could readily have amended § 1071(b)(3) to broaden or explain the phrase “all the expenses of the proceeding.” The only substantive amendment made by Congress, however, actually narrowed the scope of subsection (b)(3). See Trademark Law Revision Act of 1988, Pub.L. No. 100-667, § 120, 102 Stat. 3935, 3942. (barring court from awarding “unreasonable” expenses).[4] Accordingly, the legislative history of § 1071(b)(3) is insufficient to overcome the American Rule’s presumption against fee shifting, and the majority’s decision is erroneous.
B.
There is no reason for our Court to disregard the American Rule in this case. Indeed, a primary justification for the Rule is that a party “ ‘should not be penalized for merely ... prosecuting a lawsuit.’ ” Summit Valley, 456 U.S. at 724, 102 S.Ct. 2112 (quoting Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) (explaining that “the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents’ counsel”)). By requiring Shammas to pay “all the expenses of the proceeding,” my friends in the majority simply penalize him for seeking vindication of his trademark rights. In that circumstance, § 1071(b)(3) should not escape application of the American Rule.
Under today’s ruling, the PTO will collect its attorney’s fees even if Shammas prevails on the merits. Such a result flies in the face of the American Rule and must therefore overcome the Rule’s presumption against fee shifting. As the Supreme Court has recognized, “intuitive notions of fairness” caution against requiring the litigant to pay the loser’s attorney’s fees absent “a clear showing that this result was intended” by Congress. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 685, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983) (emphasis added).
C.
Absent explicit statutory language authorizing attorney’s fees awards, the courts can only speculate on whether the phrase “all the expenses of the proceeding” includes the PTO’s attorney’s fees. Against the backdrop of the American Rule, however, the courts are not entitled to make educated guesses. In these circumstances, the American Rule precludes the PTO from recovering such fees under § 1071(b)(3). Because I would vacate the attorney’s fees award that was made to the PTO, I respectfully dissent.

. The American Rule is the antithesis of the rule utilized in England, whereby successful litigants are entitled to recover their attorney’s fees from the losing parties. See Ruckelshaus v. Sierra Club, 463 U.S. 680, 684, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

. Our Court has agreed that Congress could intend the phrase "all the expenses of the proceeding” to mean "more than that which is ordinarily included in the word 'costs.' ” Robertson v. Cooper, 46 F.2d 766, 769 (4th Cir.1931). In the context of the trademark statutes, however, the term “expenses” does not include "attorney’s fees,” in that such fees are explicitly referenced when authorized. See 15 U.S.C. §§ 1114(2)(D)(iv), 1116(d)(11), 1117(a), 1117(b), and 1122(c); see also S.Rep. No. 93-1400, at 2 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133 (explaining, in support of amendment to Lanham Act, that “[e]xisting law since 1967 is that attorney fees are recoverable only in the presence of express statutory authority”).

. In 1836, Congress established a new fund for the Patent Office — financed by the application fees of patent applicants — which it designated for the "salaries of the officers and clerks ... and all other expenses” of the Office. See Patent Act of 1836, ch. 357, § 9, 5 Stat. 117, 121. The majority suggests that, in the 1836 Act, "Congress understood the term 'expenses' to include the salaries of the Office's employees,” including the salaries of its attorneys. See Ante at 226. The 1836 enactment shows, however, that when Congress intended to authorize attorney's fees as a subset of "all ... expenses,” it so provided.

. Shammas contends here — and the PTO does not dispute — that, prior to 2013, the PTO had never sought an attorney’s fee award under the patent and trademark laws. If such awards had (Continued) been generally available, the PTO's silence in the face of such authority is more than passing strange.