James WILSON; Timothy R. Wadding; Joseph M. Schmitt; Ronald Claybourne; George F. Lyons; and Donald O. Kerr, Plaintiffs–Appellants (94–3837), Cross–Appellees,

v.

The INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO; Teamsters Local 507, Defendants,

Teamsters Local 92 (94–3863); Matlack, Inc. (94–3856); and Casol Leasing, Inc. (94–3861), Defendants–Appellees, Cross–Appellants.

Nos. 94–3837, 94–3856, 94–3861 and 94–3863.

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1996.

Decided May 2, 1996.

Rehearing en banc Denied May 2, 1996.

Rehearing Denied July 16, 1996.

Thomas A. McCormack, McCormack, Wolgamuth & Watling, Cleveland, OH, for Local 507 International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers.

John R. Doll (argued), Julie C. Ford (briefed), Logothetis & Pence, Dayton, OH, for Local 92 International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers in Nos. 94–3837, 94–3863.

Keith L. Pryatel (briefed), Millisor & Nobil, Cleveland, OH, Judith Batson Sadler, Charles E. Sykes (argued and briefed), Douglas H. Maddux, Jr. (briefed), Bruckner & Sykes, Houston, TX, for Matlack, Inc. in No. 94–3837.

Michael J. Ranallo, Millisor & Nobil, Cleveland, OH, for Casol Leasing in No. 94–3837.

Judith Batson Sadler, Charles E. Sykes (argued and briefed), Douglas H. Maddux, Jr. (briefed), Bruckner & Sykes, Houston, TX, for Matlack, Inc. in No. 94–3856.

Keith L. Pryatel (briefed), Millisor & Nobil, Cleveland, OH, for Casol Leasing in No. 94–3861.

Before: KEITH, MARTIN, and NELSON, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Plaintiffs, all of whom are former employees of defendant Matlack, Inc., filed suit on November 18, 1991, against the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; Local 507 of the International Brotherhood of Teamsters; Local 92 of the International Brotherhood of Teamsters; Matlack, Inc.; and Casol Leasing, Inc., alleging that Matlack breached its collective bargaining agreement with Local 92 and that Local 92 breached its duty of fair representation to the plaintiffs. Prior to trial, the district court dismissed plaintiffs Wadding, Schmitt, Claybourne, Lyons, and Kerr, leaving only James Wilson as the remaining party. Among other things, plaintiffs appeal this dismissal. The district court also dismissed Local 507 and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, leaving Matlack, Casol Leasing, and Local 92 as the remain-

Edward L. Gilbert (argued and briefed), Edward L. Gilbert Company, L.P.A., Akron, OH, for Plaintiffs–Appellants, Cross–Appellees.

ing defendant parties. This dismissal has not been appealed.

Wilson's claim, commonly called a "hybrid" action alleging an employer's breach of a collective bargaining agreement and a union's breach of its duty of fair representation under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, was heard in a seven-day jury trial commencing on February 14, 1994. On April 8, 1994, the jury returned a verdict in favor of Wilson, and awarded $456,000.00 in lost pension benefits as damages. The parties filed various post-trial motions seeking judgment as a matter of law, a new trial, and/or an altered judgment. On July 1, the district court ordered a new trial contingent upon Wilson's acceptance or rejection of its remitted damages award in the amount of $133,296.83, the discounted present value of Wilson's lost pension benefits. On July 8, Wilson accepted the remittitur, and the district court entered a final judgment on July 13.

Wilson, along with the other five previously dismissed plaintiffs, filed a timely appeal to this Court, asserting several errors, chief· among them the district court's dismissal of Wadding, Schmitt, Claybourne, Lyons, and Kerr on the ground that these individuals had failed to invoke or exhaust available grievance and arbitration remedies prior to filing suit in federal court. Each of the defendants cross-appealed, claiming that the district court committed numerous errors. After an extensive review of the record, we AFFIRM the judgment entered on the jury's verdict on the issue of liability, REVERSE the district court's judgment as to the award of attorneys' fees, and REMAND for further proceedings.

## I.

Matlack is a nationwide trucking company engaged in hauling both dry and liquid bulk products. Matlack has been party for several years to a multi-employer collective bargaining agreement with the Central Conference of Teamsters, covering some thirteen midwestern states, including Ohio. Defendant Local 92 served as the collective bargaining representative for Matlack's Canton, Ohio terminal employees. Wilson and the five

dismissed plaintiffs were Matlack employee truck drivers based out of the Canton terminal. On May 20, 1988, Matlack closed its Canton terminal and laid off its Canton drivers, claiming poor business as the reason for closure.

Pursuant to the collective bargaining agreement between Local 92 and Matlack, Matlack is required to make available to laid off employees any positions that open up within three years of the closing of a facility. Section 5.5(c) of the agreement states that:

When a branch, terminal, division, or operation is closed and the work of the branch, terminal, division or operation is eliminated, employees who are laid-off thereby shall be given first opportunity for available regular employment at any other branch, terminal, division, or operation of the Employer within the Area of the Supplemental Agreement under which employed. The obligation to offer such employment shall continue for a period of three (3) years from the date of closing. However, the Employer shall not be required to make more than one offer during this period. Any employee accepting such offer shall pay his own moving expenses. If hired, he shall go to the bottom of the seniority board but shall have company seniority for fringe benefits only.

After closing the Canton terminal, Matlack offered Wilson a position at Matlack's Cincinnati terminal. Wilson did not accept the offer.

In June of 1989, Matlack opened a new "intermodal" truck terminal in Akron, Ohio, in conjunction with defendant Casol Leasing. Casol Leasing's corporate responsibility was to hire the drivers working out of the new Akron terminal. Although Casol's sole function is to provide employees to Matlack, Casol Leasing and Matlack are separate corporate entities. Matlack did not offer Wilson a position at the new Akron facility and Wilson claims that he was·completely unaware of the existence of a Matlack trucking terminal at Akron until he received an anonymous phone call informing him of that fact on May 18, 1991. After driving to Akron to determine whether Matlack in fact was operating out of Akron, Wilson filed grievances with Local 92 on May 20. Wilson's grievances ultimately

were dismissed as untimely in 1991 by the Joint State Committee in Ohio, the arbitration committee in charge of handling disputes under the collective bargaining agreement.

Finally, on November 18, 1991, Wilson, along with the other five former Matlack employees, filed this complaint in district court pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), alleging that Local 92 breached its duty of fair representation in its handling of Wilson's grievances, and that Matlack breached the collective bargaining agreement governing the relations between the parties. Also named in the complaint was Casol Leasing. The plaintiffs claimed that Casol Leasing was Matlack's "alter ego" and therefore liable under the collective bargaining agreement. On June 14, 1993, the district court granted summary judgment in favor of defendants Local 507 and the International Brotherhood of Teamsters, dismissing them from the case. As noted above, the parties have not appealed this ruling.

## II.

### A.

The plaintiffs appeal several issues, three of which merit discussion. Plaintiffs first argue that the district court erred by awarding summary judgment in favor of the defendants and dismissing Wadding, Schmitt, Claybourne, Lyons, and Kerr as improper parties to the lawsuit. The district court dismissed these plaintiffs on the ground that each had failed to exhaust his administrative remedies before seeking relief in federal court.

■ We review the district court's award of summary judgment de novo. *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 526 (6th Cir.1991). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether summary judgment is proper, we view the facts and any reasonable inferences drawn from those facts in a light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However,

the mere existence of a colorable actual dispute does not preclude an award of summary judgment. There must be a genuine dispute between the parties on an issue of material fact in order to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (citations omitted).

■ Plaintiffs do not dispute that a party must exhaust contractual grievance remedies before seeking relief in federal court. *See Clayton v. International Union*, 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981); *Durham v. Mason and Dixon Lines*, 404 F.2d 864, 865 (6th Cir.1968), *cert. denied*, 394 U.S. 998, 89 S.Ct. 1594, 22 L.Ed.2d 776 (1969). Instead, they claim that: 1) plaintiff Wilson's grievance was a group grievance, filed on behalf of all six plaintiffs, and that they therefore have in fact exhausted their contractual grievance procedures; or, in the alternative, 2) they were excused from the exhaustion requirement because it would have been futile for them to pursue the contractual remedies available under the collective bargaining agreement. Neither of these arguments wins the day.

■ Here, the collective bargaining agreement did not address the issue of whether a union member may file a grievance on behalf of other union members. Accordingly, the district court considered evidence extrinsic to the actual agreement to determine whether group filing of grievances was proper under the agreement. *See Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276, 280 (6th Cir.), *cert. denied*, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974). The evidence submitted by the parties tended to show that group grievances had been allowed in the past, but only where the grievance was filed by a union steward, or where all members of the group personally signed the grievance. In light of this, the district court found that, although group grievances may have been filed under the agreement in some situations, the grievance filed by Wilson did not qualify as a group grievance. After a careful review of the facts, particularly those relied upon by the plaintiffs, we must agree with the district court. Most persuasive in our view is the fact that none of the dismissed plaintiffs signed the grievance alleg-

edly filed on their behalf. Indeed, at least one did not even know that a grievance had been filed until long after the grievance process had begun.

 Nor do we believe that plaintiffs fall within the futility exception to the exhaustion requirement as constructed by the Supreme Court. Normally, an employee "must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). However, an exception to this rule exists where an aggrieved employee can show that pursuit of contractual remedies would be "futile." *Glover v. St. Louis–San Francisco Ry.,* 393 U.S. 324, 330, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). This Circuit requires a "clear and positive showing" that pursuit of grievance procedures would be futile before allowing access to federal courts on Section 301 claims. *Terwilliger v. Greyhound Lines,* 882 F.2d 1033, 1039 (6th Cir.1989), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990) (relying on *Miller v. Chrysler Corp.,* 748 F.2d 323, 326 (6th Cir.1984)).

 Here, plaintiffs ground their futility argument in union representative Russell Albright's alleged hostility toward their grievance. However, as noted by the district court, Albright's handling of the grievance, while perhaps less than vigorous, was not "hostile." Plaintiffs have submitted no evidence showing anything worse than a perfunctory response by Albright to Wilson's claim. While this may tend to establish a breach of the union's duty of fair representation, it does not establish hostility such that plaintiffs may now be excused from having failed to pursue available contractual grievance procedures.

In sum, the district court appropriately awarded summary judgment in favor of the defendants and dismissed plaintiffs Wadding, Schmitt, Lyons, Claybourne, and Kerr from the lawsuit.

**B.**

Plaintiff Wilson next claims that the district court erred in refusing to grant him recovery for his attorneys' fees. We first address Wilson's claim for attorneys' fees against Local 92.

 Under the American Rule, unless a contract or a statute expressly authorizes an award of attorneys' fees, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). However, we have held that attorneys' fees are recoverable as *damages* against union defendants in Section 301 actions. *Scott v. Local Union 377, International Brotherhood of Teamsters,* 548 F.2d 1244, 1246 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977). In *Scott,* we stated:

The Supreme Court in *Alyeska* reaffirmed the traditional American rule that attorney fees are not ordinarily recoverable by the prevailing litigant in federal litigation in the absence of statutory authorization. We do not read the decision as in any was affecting those cases in which the attorney fees are not an award to the successful litigant in the case at hand, but rather are the subject of the law suit itself. More particularly, we do not understand that the decision in *Alyeska* in any way affects the measure of damages which can be awarded to a prevailing plaintiff in a suit for a breach of a union's duty of fair representation in an action under [Section] 301.

*Id.* In other words, in Section 301 cases the damages arising from a union's breach of its duty of fair representation include the attorneys' fees reasonably incurred in pursuing a claim against the employer for breach of the collective bargaining agreement. *Id.*

In its memorandum opinion denying Wilson's claim for attorneys' fees, the district court acknowledged this Court's decision in *Scott.* However, the district court believed that the Supreme Court's later decision in *Summit Valley Indus., Inc. v. Local 112, United Brotherhood of Carpenters,* 456 U.S. 717, 102 S.Ct. 2112, 72 L.Ed.2d 511 (1982), undermined *Scott's* holding that attorneys' fees were recoverable as damages against a union in Section 301 actions. Accordingly, the district court denied Wilson's claim for attorneys' fees.

■ We disagree with the district court's conclusion. In *Summit Valley*, the Supreme Court held that attorneys' fees were not recoverable damages in a suit brought pursuant to Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187. *Id.* at 722–24, 102 S.Ct. at 2115–16. That provision allows employers injured by a union's unfair labor practice to bring suit against the union for damages. The Court's decision proceeded from an analysis of Section 303's express language and Congressional intent peculiar to the enactment of Section 303. Unlike Section 301, Section 303 contains an express remedial provision, and the Court, in its analysis of Section 303, also concluded that Congress did not intend the damages provision to encompass attorneys' fees incurred by the employer in bringing suit against the union. Further, "since a union does not owe a duty of fair representation to the employer, the latter's expense incurred in obtaining legal representation is not 'the harm itself,'" as it is in Section 301 cases. *Bennett v. Local Union No. 66*, 958 F.2d 1429, 1440 n. 9 (7th Cir.1992). The Seventh Circuit in *Bennett* and the Ninth Circuit in *Zuniga v. United Can Co.*, 812 F.2d 443, 454–55 (9th Cir.1987), both reached a similar conclusion when assessing the scope of *Summit Valley's* holding. We agree with the reasoning of both cases and therefore hold that *Summit Valley* does not undermine this Court's decision in *Scott*.[1] Accordingly, Wilson was entitled to recover from the union his reasonable attorneys' fees expended in pursuing his claim against Matlack and Casol Leasing.[2]

■ Wilson's claim for attorneys' fees against defendant employers Matlack and Casol Leasing, however, is subject to the American Rule, which states that attorneys' fees are not normally recoverable absent statutory or contractual authority. *Alyeska Pipeline*, 421 U.S. at 257, 95 S.Ct. at 1621. The rule is subject to certain equitable exceptions, i.e. the common benefit or common fund exceptions, the "willful disobedience of a court order" exception, and the bad faith exception. *Id.* at 257–59, 95 S.Ct. at 1621–22. Wilson attempts to fit his claim for attorneys' fees against Matlack and Casol Leasing within the bad faith exception to the traditional rule, essentially claiming that Matlack and Casol Leasing acted in bad faith by defending this lawsuit.

■ Wilson's claim fails. Wilson has presented to this Court no evidence of Matlack's or Casol Leasing's bad faith in defending this lawsuit, other than his claim that they knew they had violated the collective bargaining agreement. However, the record is clear that Matlack and Casol Leasing did not know they had violated the collective bargaining agreement; indeed, they argued vehemently at trial and to this Court that they did not. We see nothing in the record indicating that the defendants pursued their defenses in bad faith.

### C.

■ Wilson next claims that the district court erred in striking his request for punitive damages against Matlack and Casol Leasing. This Circuit has not determined whether punitive damages are recoverable against an employer for breach of a collective bargaining agreement, although it is clear that punitive damages are not available against a union for breach of the duty of fair representation. *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 52, 99 S.Ct. 2121, 2127–28, 60 L.Ed.2d 698 (1979); *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1106–07 (6th Cir.1981). Our research

1. Indeed, this Circuit has allowed awards of attorneys' fees to successful plaintiffs in Section 301 actions in cases arising after *Summit Valley* was decided, although the panels in those decisions did not address the effect of *Summit Valley* on our holding in *Scott*. *See Allen v. Allied Plant Maintenance Co.*, 881 F.2d 291, 298–99 (6th Cir. 1989); *Bagsby v. Lewis Brothers, Inc.*, 820 F.2d 799, 801 n. 3 (6th Cir.1987).

2. Our holding in *Knollwood Cemetery Ass'n v. United Steelworkers*, 789 F.2d 367, 369 (6th Cir. 1986), is not to the contrary. Although we stated that "§ 301 of the [Labor Management Relations Act] does not authorize an award of attorney fees as an element of damages," and cited *Summit Valley* as support, the case involved a *union's* request that the cost of its attorneys' fees be borne by the employer. Because an employer does not owe a duty of fair representation to a union, the failure to provide legal representation clearly did not represent an element of the union's damages in that case, and the Court appropriately applied the traditional rule against awarding attorneys' fees on those facts.

revealed very little case law on this precise issue. Those courts considering the matter have held either that punitive damages against the employer are unavailable under Section 301, *United Steelworkers v. Connors Steel Co.*, 855 F.2d 1499, 1510 (11th Cir.1988), *cert. denied* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989), or that punitive damages generally are unavailable absent a showing that the employer's conduct is something more egregious than a simple breach of contract. *E.g., Merk v. Jewel Food Stores Div. of Jewel Co.*, 945 F.2d 889, 899 (7th Cir.1991), *cert. denied*, 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992).

■ We need not decide whether punitive damages can ever be awarded against an employer in Section 301 suits. Even if we were to conclude that punitive damages are available in appropriate circumstances, the defendants' conduct in this case is not sufficiently "outrageous" or "egregious" to warrant an award of punitive damages against them. *See Butler v. Local 823, International Brotherhood of Teamsters*, 514 F.2d 442, 454 (8th Cir.), *cert. denied* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975).

### III.

#### A.

Matlack, along with Casol Leasing and Local 92, makes several objections to the award of damages to Wilson. As proof of damages, Wilson introduced at trial a "road guide" booklet summarizing the various pension plans available under the collective bargaining agreement and testified concerning the amounts available under the "30 and out" plan. Very broadly, the "30 and out" plan provided for increased pension benefits under certain circumstances for employees with at least thirty years employment with Matlack. Wilson testified that he "wanted" to be eligible for this pension plan, and testified concerning his lost pension benefits based on the assumption that he did qualify for the "30 and out" plan. However, he did not introduce any specific evidence of his ability to qualify under the requirements of the "30 and out" plan. The defendants, for whatever reason, chose not to argue to the jury at trial

that Wilson was not eligible for benefits under the "30 and out" plan. Instead, the defendants waited until after trial, in response to the district court's request for evidence on the damages issue, to present expert affidavits questioning Wilson's eligibility under the "30 and out" plan.

Matlack now claims that the district court erred in calculating the proper amount of Wilson's damages. At trial, the jury awarded Wilson $456,000.00 in pension benefit damages, presumably based on the "30 and out" pension plan contained in the parties' collective bargaining agreement. After trial, the district court, noting that the jury failed to discount the pension award to reflect its present value, held that a new trial would be granted if Wilson failed to accept a remittitur of the jury's award. In a post-trial memorandum opinion and order, the court pointed out that neither party requested a specific present value instruction, nor did they introduce detailed present value testimony at trial. The court's *sua sponte* instruction to the jury on this issue, characterized by the district court itself as "grossly inadequate," stated: "In this case, Mr. Wilson has limited his claim for damages to lost pension benefits. You are instructed that the burden is on Mr. Wilson to prove by a preponderance of the evidence the amount of lost pension benefits he is due reduced to present value." Unfortunately, the jury awarded an amount far in excess of any possible present value of Wilson's pension benefit damages.

The defendants subsequently made a motion for a new trial or remittitur of the damages award. After concluding that the defect in its jury instructions did not warrant a new trial, the district court held that Wilson was entitled to $133,296.83 in present value damages, an amount which reflected "the maximum possible present value of [the] largest pension benefit to which Wilson would have been entitled." Wilson timely accepted this remittitur.

The defendants each object to the amount of the damages award as calculated by the district court. Matlack argues that the district court erred in concluding that Wilson was entitled to $133,296.83, claiming that this amount erroneously assumes that Wilson was entitled to "30 and out" pension benefits.

Matlack asserts that Wilson failed to establish that he would have been eligible for the "30 and out" pension plan at trial, and that the district court correspondingly erred by calculating a remittitur amount based upon Wilson's eligibility for that plan.

Casol Leasing argues that the district court improperly instructed the jury to allow for an award of front pay damages, claiming that an award of front pay pension benefits is inappropriate in this case. Union defendant Local 92 claims both that the district court erred in instructing the jury on damages and that Wilson failed to prove by a preponderance of the evidence his entitlement to lost pension benefits.

■ After careful review of the testimony and exhibits presented at trial, we affirm the district court's calculation of Wilson's damages. We review the district court's decision on a motion seeking a remittitur of the jury's award for an abuse of discretion. *Roush v. KFC Nat'l Management Co.*, 10 F.3d 392, 397 (6th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994). In general, we will not vacate a damage award unless we are left with a "definite and firm conviction that a mistake resulting in plain injustice has been committed." *Black v. Ryder/P.I.E. Nationwide,* 970 F.2d 1461, 1470 (6th Cir.1992); *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1119 (6th Cir.1994) (stating that damage awards are a question of fact to be reviewed under the clearly erroneous standard). In Section 301 cases, the district court has broad discretion in fashioning an appropriate remedy under the overarching principle of federal labor law to "compensate for injuries caused by violations of employees' rights." *Foust,* 442 U.S. at 48–49, 99 S.Ct. at 2126 (citations omitted). The district court's primary goal should be to ensure that the "relief in each case [is] fashioned to make the injured employee whole." *Id.* at 49, 99 S.Ct. at 2126 (citation omitted). In addition, we note that, although proof of damages cannot be too remote or speculative, *Broan Mfg. Co. v. Associated Distrib., Inc.,* 923 F.2d 1232, 1235 (6th Cir.1991), where the fact of damage has been established, a lesser quantum of proof is necessary to establish the amount. *Id.; Local 984, International Brotherhood of Teamsters,* 287 F.2d 231, 243 (6th Cir.), *cert. denied,* 366 U.S. 962, 81 S.Ct. 1922, 6 L.Ed.2d 1254 (1961).

■ Here, we believe the district court was within its discretion in granting a remittitur of $322,703.17. The final damages award of $133,296.83 was a present value amount based on Wilson's eligibility to receive pension payments after he reached age fifty under the "30 and out" plan. Although the district court's opinion granting a remittitur is somewhat less than clear on this issue, our review of the record leads us to conclude that Wilson submitted sufficient evidence to allow the jury to award damages based on the "30 and out" pension plan.

■ At trial, Wilson submitted a pension plan booklet detailing the various pension plans available under the Central States Agreement, the collective bargaining agreement in effect, and two copies of previous agreements between the parties detailing increasing employer contribution rates in accordance with pension plan requirements. In addition, Wilson testified at trial that he would have received $2,000 per month in pension benefits after reaching age fifty. The jury was entitled to infer from this evidence that Wilson's damages should be calculated based on the assumption that Wilson qualified for the "30 and out" plan. The defendants had ample opportunity at trial to cross-examine Wilson as to his eligibility for these benefits and to introduce evidence rebutting Wilson's testimony. Post hoc evidence that Wilson was not in fact qualified for the "30 and out" plan, not submitted at trial or presented to the jury, cannot be used to undermine the jury's verdict.

■ Similarly, although it is a close issue, we believe the award of front pay damages is appropriate in this case. The decision to award front pay damages is "governed by the sound discretion of the trial court." *Davis v. Combustion Eng'g, Inc.,* 742 F.2d 916, 923 (6th Cir.1984). No per se rule governs the appropriateness of front pay damages in a particular case. *Cf. Suggs v. ServiceMaster Educ. Food Management,* 72 F.3d 1228, 1234 (6th Cir.1996) (listing factors to be considered in awarding front pay damages). Certainly, the age of the employee is

an important factor in determining whether the award of front pay pension benefits is warranted. *Davis*, 742 F.2d at 923. However, this factor is not conclusive. Ultimately, the question to be answered is whether front pay damages are needed in a particular case to make the plaintiff whole. Here, although we might have decided the issue differently, we cannot say that the district court abused its discretion in determining that a front pay award was appropriate to compensate Wilson for his injuries.

In sum, finding no "plain injustice" in the award of damages in this case, we reject defendants' attacks on the existence and amount of Wilson's damage award.

### B.

■ Matlack also claims that the district court erred by denying its motion for judgment as a matter of law on the ground that Wilson's claims were barred by the statute of limitations. The statute of limitations for filing a hybrid Section 301/duty of fair representation claim is six months. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983); *Schoonover v. Consolidated Freightways Corp.*, 49 F.3d 219, 221–22 (6th Cir.1995). Such a claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action. *Chrysler Workers Ass'n v. Chrysler Corp.*, 834 F.2d 573, 578 (6th Cir.1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). Perhaps most importantly, a party is not required to sue on a hybrid claim until the arbitration panel renders its final decision, or until the party reasonably should know that the union has abandoned the party's claim. *Schoonover*, 49 F.3d at 222.

■ The district court properly denied Matlack's motion. Judgment as a matter of law is proper where "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). Here, Wilson introduced evidence that he became aware of union representative Albright's failure to diligently pursue his claim sometime after May 20,

1991. Wilson filed this claim on November 20, 1991, less than six months later. Sufficient evidence exists to allow the jury to conclude that Wilson filed his claim within the applicable six month statute of limitations, and the district court properly denied Matlack's motion for judgment as a matter of law.

### IV.

### A.

■ The defendants make several objections to the district court's construction of the collective bargaining agreement and its instructions to the jury in accordance with that construction. When reviewing objections to jury instructions, we keep in mind that:

> When instructions are challenged on appeal, our duty is not to read the instructions word for word in search of an erroneous word or phrase. Rather, our task is to review the instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision.

*O–So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir.1992) (citations and internal quotations omitted). Our review of the record as a whole indicates that the district court's instructions adequately informed the jury of the issues presented and the applicable law.

The defendants take issue with the district court's instruction to the jury regarding Section 5.5(b)(2) of the collective bargaining agreement. Section 5.5(b)(2) provides:

> When a branch, terminal, division or operation is closed and the work of the branch, terminal, division or operation is transferred to another branch, terminal, division or operation in whole or in part, an employee at the closed or partially closed branch, terminal, division or operation shall have the right to transfer to the branch, terminal, division or operation into which the work was transferred if regular work is there available.

■ In instructing the jury regarding Matlack's obligations under this section of

the collective bargaining agreement, the district court stated:

> Article 5, Section 5.5(b)(2) of the Central States Contract governs Matlack's duties to Mr. Wilson if the work of the Canton Matlack Terminal was transferred. You must determine whether Mr. Wilson has established by a preponderance of the evidence that the work of the Canton Matlack Terminal was transferred, in whole or in part, to Matlack's Akron facility.
>
> . . .
>
> You are instructed that Matlack transferred some or all of the work of its Canton Terminal to its Akron operation under Article 5, Section 5.5(b)(2), if Mr. Wilson has shown by a preponderance of the evidence that, at the time that Matlack closed its Canton Terminal, Matlack planned to transfer some or all of its work of the Canton Terminal to its Akron operation and that subsequently Matlack carried through on its plan.
>
> If you find that Matlack hired persons for regular work at the Akron operation, but Matlack did not inform Mr. Wilson of his right, according to seniority, to transfer to the Akron operation into which some or all of the work of the Canton Matlack Terminal was transferred, then you are instructed that Matlack breached its duty to Mr. Wilson under Article 5, Section 5.5(b)(2) under the Central States Contract.

In addition, the district court gave the jury a general instruction regarding the duty to speak, stating that:

> [T]he law may impose an affirmative duty to speak on an individual or corporation. A duty to speak will arise in any situation where a party imposes special confidence in the other because of that person's position, and the other person knows of this confidence. You may consider whether the parties to the Central States Contract had a mutual understanding that union members of Local 92, like Mr. Wilson, placed a special confidence in Matlack to tell them about the existence of new Matlack operations in the Central States Area because the Central States Contract obligated Matlack to give those

union members work rights at such operations.

Matlack objects to this "duty to speak" instruction, claiming that it is contrary to the theory of federal labor law that the collective bargaining relationship is adversarial. *See NLRB v. Insurance Agents' International Union,* 361 U.S. 477, 488–89, 80 S.Ct. 419, 426–27, 4 L.Ed.2d 454 (1960). We agree that this instruction was erroneous, but do not find it to be sufficiently prejudicial such that a new trial is warranted. The nature of the relationship between a union employee and an employer is not such that the law imposes upon the employer a duty to speak based upon the trust and confidence the employee has imposed upon the employer. However, pursuant to Section 5.5(b)(2) of the collective bargaining agreement, it was entirely reasonable for the jury to conclude that Matlack undertook a contractual obligation to inform employees of a closed terminal about the existence of regular work transferred from the closed terminal to an operating terminal. Accordingly, Matlack's "duty to speak," although not arising from a relationship of trust and confidence, certainly could have arisen from the contractual obligation it undertook pursuant to Section 5.5(b)(2).

Keeping in mind that we review the district court's jury instructions as a whole and will not reverse unless those instructions are confusing, misleading, or prejudicial, we conclude that any errors made by the district court here did not unduly prejudice the jury's result. The jury was entitled to find that Matlack had a contractual duty to speak under Section 5.5(b)(2) of the collective bargaining agreement.

### B.

Defendant Casol Leasing takes issue with the district court's instruction to the jury that it could find Casol Leasing to be Matlack's "alter ego," and therefore liable to Wilson for breach of the Central States collective bargaining agreement. Casol Leasing insists that the "alter ego" doctrine applies only to situations in which a change in the corporate form allows an employer to evade collective bargaining obligations, and that common ownership and evidence of an

intent to avoid labor agreements are essential to an alter ego claim. We disagree.

■ This Court extensively reviewed the alter ego doctrine in *NLRB v. Fullerton Transfer & Storage Ltd.*, 910 F.2d 331 (6th Cir.1990). In *Fullerton Transfer*, we stated:

The alter ego doctrine is most commonly used in labor cases to bind a new employer that continues the operations of an old employer in those cases where the new employer is "merely a disguised continuance of the old employer." *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 456, 86 L.Ed. 718 (1942).... Increasingly, the term also is applied to so-called double-breasted operations to determine whether two or more coexisting employers performing the same work are in fact one business, separated only in form. In both instances, the Board has formulated the test as "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision, and ownership."

*Id.* at 336 (quoting *Nelson Elec. v. NLRB*, 638 F.2d 965, 968 (6th Cir.1981) (footnote omitted)). No one factor is dispositive in determining whether the corporate form should be disregarded in a particular case. Indeed, quoting *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 403–04, 80 S.Ct. 441, 443–44, 4 L.Ed.2d 400 (1960), we further elaborated:

[A]s Mr. Justice Cardozo said in *Berkey v. Third Avenue R. Co.*, 244 N.Y. 84, 95, 155 N.E. 58, 61 "Dominion may be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent. Where control is less than this, we are remitted to the tests of honesty and justice." That is not a complete catalogue. The several companies may be represented as one. Apart from that is the question whether in fact the economic enterprise is one, the corporate forms being largely paper arrangements that do not reflect the business realities. One company may in fact be operated as a division of another; one may be only a shell, inadequately financed; the affairs of the group may be so intermingled that no distinct corporate lines are maintained. These are some, though by no means all, of the relevant considerations as the authorities recognize.

*Fullerton Transfer*, 910 F.2d at 339. Drawing upon the guidance provided by this Court in *Fullerton Transfer*, we think it clear that common ownership or an intent to evade federal labor law obligations are not necessary prerequisites to a finding of alter ego status.

In addition, we have held that "[a] determination of alter ego status is a question of fact." *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir.1986). Here, Wilson introduced evidence that Matlack and Casol Leasing shared the same corporate headquarters and exchanged employees. Further, at least one Matlack official periodically represented Casol Leasing during labor negotiations. Finally, it appears that Matlack supervised the truck drivers hired by Casol Leasing at Matlack facilities, including the Canton terminal. From this evidence, we believe that the jury was entitled to conclude as a matter of fact that Casol Leasing was merely Matlack's alter ego at the Canton terminal. We also believe that, although perhaps not perfect, the instructions on this issue adequately informed the jury of the considerations relevant to a finding that alter ego status existed. The defendants' remaining objections to the district court's instruction to the jury are without merit.

In sum, we find no error requiring reversal of the jury's verdict as to defendants' liability to Wilson, and AFFIRM that portion of the judgment. However, because the district court erred in determining that Wilson could not recover his attorneys' fees against Local 92, we REVERSE and REMAND for a further damages hearing consistent with this opinion.